UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-80054-CIV-MIDDLEBROOKS
MAGISTRATE JUDGE REINHART

IRVING BROWN,

    Petitioner,

v.

MARK S. INCH,

    Respondent.
_____/

## **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE**

### I. Introduction

This Cause is before the Court upon Petitioner's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his conviction and sentence, following a jury trial, in Case No. 50-2015-CF-001540-AXX-MB, entered in the state circuit court in and for Palm Beach County, Florida. [ECF No. 9].

This matter has been referred to me for consideration and report, pursuant to 28 U.S.C. § 636 and the Magistrate Rules of the Local Rules of the Southern District of Florida [ECF No. 21]. For the reasons detailed below, the Petition should be denied.

### II. Claims

Construing the arguments liberally, as afforded to *pro se* litigants pursuant to *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), Mr. Brown raised the following claims:

1. Counsel was ineffective for failing to suppress control calls because the Florida Statute, as applied, violates the Constitution because Petitioner's phone was password protected. [ECF No. 9, p. 5].

    2. Counsel was ineffective for failing to file a motion to suppress the control calls from the victim's motion in violation of marital privilege. [ECF No. 9, p. 9]

### III. Timeliness

Stated broadly, an application for a writ of habeas corpus under 28 U.S.C. § 2254 must be filed before a 1-year limitations period expires, and this limitation period usually runs from the date the challenged judgment became "final." 28 U.S.C. § 2244(d). In this case, Respondent does not dispute timeliness of the Petition. [ECF No. 16, p. 4].

### IV. Exhaustion

Pursuant to 28 U.S.C. § 2254(b)–(c), petitioners must exhaust their claims in state court before presenting them in a federal habeas petition. When petitioners do not properly present their claims to a state court by exhausting those claims and complying with the applicable state procedure, § 2254 may bar federal review of those claims in federal court. *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (relying upon 28 U.S.C. § 2254(b)–(c)).

The Respondent properly concedes that the claims, which were raised in Petitioner's Rule 3.850 Motion were exhausted. [ECF No. 16, p. 6].

### V. Pertinent Factual and Procedural Background

A. Procedural History

The State charged Mr. Brown with three counts of Sexual Activity with a child and one count of Battery of a Child. [ECF No. 17-1, Ex. 1]. Following a trial, the jury returned a verdict of guilty on Count I, not guilty of Counts II and III, and guilty of Count IV. [ECF No. 17-1, Ex. 2].

Mr. Brown appealed. [ECF No. 17-1, Ex. 4]]. The Florida Fourth District Court of Appeal affirmed without a written decision. *Brown v. State*, 237 So. 3d 1001 (Fla. 4th DCA 2017) (Table).

Afterwards, and pertinent to this action, Mr. Brown filed a Second Amended Rule 3.850 Motion seeking postconviction relief raising essentially the same claims he raises here. [ECF No. 17-1, Ex. 11]. The State Circuit Court denied both claims on the merits. [ECF No. 17-1, Ex. 12].

Mr. Brown appealed the denial of his Rule 3.850 Motion. [ECF No. 17-1, Ex. 13]. Without a written decision, the Fourth DCA affirmed. *Brown v. State*, 286 So. 3d 773 (Fla. 4th DCA 2019) (Table). Mandate issued December 27, 2019. [ECF No. 17-1, Ex. 13].

B. <u>Facts Adduced at Trial</u>

The victim in this case testified. [ECF No. 18-1, p. 24–61]. She testified that she was pulled out of class by a police deputy wanting to speak her and take her to the Butterfly House at Wellington Regional Hospital [ECF No. 18-1, pp. 27–28]. She testified that the police transported her to Wellington Regional Hospital where the detective had her do what is called a "controlled phone call" to speak to Mr. Brown while the call would be recorded by authorities. [ECF no. 18-1, p. 28]. The victim brought up that she was "just thinking, you know, about last night and everything, and I was thinking – again, I'm kind of upset." [ECF No. 18-1, p. 39]. Mr. Brown told her to hang up and said they would speak at home. [ECF No. 18-1, p. 39]. The victim had trouble with the phone connection and the controlled calls she made to Mr. Brown kept getting dropped. [ECF No. 18-1, p. 58]. On the calls, Mr. Brown did not admit to having sex with the victim. [ECF No. 18-1, pp. 24–61].

The victim's mother also testified at trial [ECF No. 18-1, p. 62–75]. She testified that the police spoke to her and asked her to come to Wellington Hospital where she first learned of the accusation that Petitioner had sexual intercourse with her 16-year-old daughter. [ECF No. 18-1, pp. 70–71]. At first, the mother was in disbelief and told police that it was not true. [ECF No. 18-1, p. 71]. She then gave police permission to listen to her call while she confronted Petitioner with

the accusation. [ECF No. 18-1, p. 73]. The state published the recorded calls for the jury. [ECF No. 18-1, p. 74]. The victim's mother stated to Petitioner "RR called you and said you've been abusing her" which the Petitioner, at first, denied. [ECF No. 18-1, p. 77]. The victim's mother then opened up about the abuse she experienced as a child stating "And because I tell you what I've been through. I've told you how many times people raped – people abused me. So right now, I don't know what to do or what to say." [ECF No. 18-1, p. 79]. Later, Petitioner said "I don't want to get in trouble. I'm scared. I don't want to get in trouble. I've never been in this kind of trouble." [ECF No. 18-1, p. 82]. The victim's mother then made another controlled call where she said, "You have to talk to me and tell me so I can have closure, so I can stop having my mind wander around the world." [ECF No. 18-1, p. 88]. Petitioner then replied, "Okay I am going to be straightforward with you… what I'm saying to you, [Victim's name] that it was consensual." [ECF No. 18-1, pp. 88–89]. The mother then responded "It was consensual? 16 year-old?" To which Petitioner replied "Yeah." [ECF No. 181-1, p. 88].

## VI. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a prisoner in state custody may not be granted a writ of *habeas corpus* for any claim that was adjudicated on the merits in state court unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented" to the state court. 28 U.S.C. § 2254(d)(1), (2); *see Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Fugate v. Head*, 261 F.3d 1206, 1215–16 (11th Cir. 2001).

A state court decision is "contrary to" or an "unreasonable application of" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court

applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams*, 529 U.S. at 405–06. In the *habeas* context, clearly established federal law refers to the holdings of the Supreme Court's decisions as of the time of the relevant state-court decision. *Hall v. Head*, 310 F.3d 683, 690 (11th Cir. 2002) (citing *Williams*, 529 U.S. at 412). However, in adjudicating a petitioner's claim, the state court does not need to cite Supreme Court decisions and the state court need not even be aware of the Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002); *Parker v. Sec'y, Dep't of Corr.*, 331 F.3d 764, 775–76 (11th Cir. 2003).

So long as neither the reasoning nor the result of the state court decision contradicts Supreme Court decisions, the state court's decision will not be disturbed. *Id*. Further, a federal court must presume the correctness of the state court's factual findings unless the petitioner overcomes them by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).

The U.S. Supreme Court in *Wilson v. Sellers*, 138 S.Ct. 1188, 1194 (2018), concluded there is a "look through" presumption in federal *habeas corpus* law, as silence implies consent. *See also Kernan v. Hinojosa*, 136 S.Ct. 1603, 1605–06 (2016) (adopting the presumption that silence implies consent but refusing to impose an irrebuttable presumption). Where the state court's adjudication on the merits of a claim is unaccompanied by an explanation: [T]he federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. *Wilson*, 138 S.Ct. at 1192. In other words, if the last state court to decide a prisoner's

federal claim provides an explanation for its merits-based decision in a reasoned opinion, "a federal *habeas* court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id*. However, if the relevant state-court decision on the merits is not accompanied by a reasoned opinion, because it was summarily affirmed or denied, a federal court "should 'look through' the unexplained decision to the last state-court decision that does provide a relevant rationale." *Id.*

Moreover, the Supreme Court repeatedly has admonished that "[t]he petitioner carries the burden of proof" and that the §2254(d)(1) standard is a high hurdle to overcome. *See Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (quoting *Richter*, 560 U.S. at 102–03 (quotation marks omitted)); *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011) (acknowledging that Section 2254(d) places a difficult burden of proof on the petitioner); *Renico*, 559 U.S. 766, 777 (2010) ("AEDPA prevents defendants - and federal courts - from using federal *habeas* corpus review as a vehicle to second-guess the reasonable decisions of state courts."); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)(Section 2254(d) "demands that state-court decisions be given the benefit of the doubt."). *See also Rimmer v. Sec'y, Fla. Dep't of Corr.*, 876 F.3d 1039, 1053 (11th Cir. 2017) (opining that to reach the level of an unreasonable application of federal law, the ruling must be objectively unreasonable, not merely wrong or even clear error).

Thus, state court decisions are afforded a strong presumption of deference even when the state court adjudicates a petitioner's claim summarily without an accompanying statement of reasons. *Richter*, 560 U.S. at 96–100 (concluding that the summary nature of a state court's decision does not lessen the deference that it is due); *Gill v. Mecusker*, 633 F.3d 1272, 1288 (11th Cir. 2011) (acknowledging the well-settled principle that summary affirmances are presumed adjudicated on the merits and warrant deference, *citing Richter*, 560 U.S. at 100–01 and *Wright v.*

*Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002)). *See also Renico*, 559 U.S. at 773 ("AEDPA ... imposes a highly deferential standard for evaluating state-court rulings ... and demands that state-court decisions be given the benefit of the doubt." (citations and internal quotation marks omitted)).

Because the "AEDPA erects a formidable barrier to federal *habeas* relief for prisoners whose claims have been adjudicated in state court," *Burt v. Titlow*, 571 U.S. 12, 19 (2013), federal courts can "grant *habeas* relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fair-minded jurists could disagree.'" *Tharpe v. Warden*, 834 F.3d 1323, 1338 (11th Cir. 2016) (internal citations omitted). This standard is "meant to be" a "difficult" one to meet. *Richter* at 102.

## VII. Discussion

Mr. Brown raises two claims challenging counsel's effectiveness that are ripe for review. The United States Supreme Court clearly established the law governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a criminal defendant to show that: (1) counsel's performance was deficient and (2) the deficiency prejudiced him. *Id.* at 690. As to the first prong, deficient performance means performance outside the wide range of professionally competent assistance. *Id.* The judiciary's scrutiny of counsel's performance is highly deferential. *Id.* at 689.

As to the second prong, a defendant establishes prejudice by showing that, but for counsel's deficient performance, there is a reasonable probability the outcome of the proceedings would have been different. *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. *Id.*

A defendant must satisfy both the deficiency and prejudice prongs set forth in *Strickland* to obtain relief on an ineffective assistance of counsel claim. Failure to establish either prong is fatal and makes it unnecessary to consider the other. *Strickland*, 466 U.S. at 697. Thus, since both prongs of the two-part *Strickland* test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000).

Combining the AEDPA *habeas* standard and *Strickland*'s two-pronged test provides the relevant inquiry in this case. To obtain *habeas* relief, a petitioner must show the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner" when it rejected his claims of ineffective assistance of counsel. *Bell v. Cone*, 535 U.S. 685, 699 (2002).

**Claim 1- Ineffective Assistance of Counsel for failing to suppress the call, which was as-applied unconstitutional**

In **Claim 1**, Petitioner claims counsel was ineffective for failing to move to suppress a recorded phone call when the victim's mother "was well informed or should have been well informed as to the constitutionality of Section 934.03(3)(c) as applied to calls made to Mr. Brown's password-protected cell phone." [ECF No. 9, p. 7]. Petitioner alleges he maintained a "right to privacy in his private communications, including those conducted by telephone." [ECF No. 9, p. 7]. Petitioner alleges his trial counsel "neither investigated, nor made a reasonable decision not to investigate the application of Section 934.03(3)(c) to phone calls made to a password protected cell phone." [ECF No. 9, p. 7].

Combining *Strickland* and the AEDPA's *habeas* standards, the legal question for this Court to review is whether the state court unreasonably applied *Strickland* when it found "a warrant was not required for the police to record Defendant's conversation" "with his wife through *her* phone

and with *her* permission" and "thus, counsel was not ineffective for failing to argue that section 934.03(4)(c) of the Florida Statutes was inapplicable." [ECF No. 17-1, pp. 233–34] (emphasis in original).

Respondent argues "Petitioner failed to show the State courts [sic.] rejection of this claim was an unreasonable application of the *Strickland* standard" because "the Florida courts rejected Petitioner's legal interpretation of §934.03(c)" and "the rejection of this claim is not contrary to or an unreasonable application of clearly established federal law." [ECF No. 16, p. 22].

In his Rule 3.850 Motion, Mr. Brown relied on *State v. K.C.*, 207 So. 3d 951, 958 (Fla. 4th DCA 2016)[ECF No. 17-1, p. 116], wherein the court held that officers must obtain a warrant before searching a password protected cell phone because the "password protection that most cell phone users place on their devices is designed specifically to prevent unauthorized access to the vast store of personal information which a cell phone can hold when the phone is out of the owner's possession." *Id.* at 955. The Circuit Court found that "Defendant's reliance on *K.C.* is misplaced." [ECF No. 17-1, p. 233]. The Circuit Court reasoned

> Here, the police did not perform a search through any of the personal information that was stored on Defendant's cell phone. Instead, they recorded Defendant's conversation with his wife through her phone and with her permission. It is clear that *K.C.* is inapplicable to the instant case and that a warrant was not required for the police to record Defendant's conversation. Thus counsel was not ineffective for failing to argue that section 934.03(4)(c) of the Florida Statutes was inapplicable. *See Long v. State*, 118 So. 3d 798, 805 (Fla.2013) (stating "counsel cannot be deemed ineffective for failing to make a meritless argument."). [ECF No. 17-1, pp. 233-34].

Section 934.03(3)(c) of the Florida Statutes provides

> [i]t is lawful ... for an investigative or law enforcement officer or a person acting under the direction of an investigative or law enforcement officer to intercept a wire, oral, or electronic communication when such person is a party to the communication or one of the parties to the communication has given prior consent to such interception and the purpose of such interception is to obtain evidence of a criminal act.

9

Therefore, the express terms of the Florida statute authorize the recording made here. Although the question before the Court is couched as one of ineffective assistance of counsel, whether counsel was ineffective turns on the interpretation of Fla. Stat. §934.03–04. However, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). The Supreme Court has repeatedly held that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Therefore, this Court will not disrupt the state court's interpretation of Fla. Stat. §934.03 that whether Petitioner's phone was password protected or not has no bearing on whether police are authorized to record a phone call when one party has given permission to do so. *See Cano v. Sec'y, Dep't of Corr.*, No. 8:17-CV-2436-T-60JSS, 2020 WL 6134225, at *9 (M.D. Fla. Oct. 19, 2020) (denying habeas relief because whether the audio recording was admissible under Fla. Stat. § 934.03(2)(c) "is an issue of state law, and a state court's determination of state law receives deference in federal court."). [1]

Therefore, because it is permissible under state law for law enforcement to intercept a communication when one party consented to the interception as part of an investigation of a criminal act, counsel was not ineffective for failing to raise a meritless argument that the recording should have been suppressed. *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000). Thus, this claim should be denied.

---

[1] If I were to reach the question, however, I would agree with the Circuit Judge's legal analysis.

**Claim 2 – Counsel was ineffective for failing to file a motion to suppress the recorded calls in violation of "marital privilege"**

In **Claim 2**, Mr. Brown claims that his wife "deceived the Petitioner into thinking that their conversation was private by suggesting that he call the police, officer in charge, as though their call was private." [ECF No. 9, p. 9]. He alleges his trial attorney "should have been well informed that the controlled calls made by Petitioner's wife were in violation of the marital privileges of Section 90.504(1) Florida Statutes (2015)". [ECF No. 9, p. 9]. "Consequently," he argues, the "controlled calls should have been the subject of a Motion to Suppress" [ECF No. 9, p. 9].

Claim 2 asks whether finding counsel was not ineffective for failing to move to suppress the recorded phone call on the basis that it violated the state marital privilege statute was an unreasonable application of *Strickland*.

In denying Mr. Brown's Rule 3.850 Motion, the trial court held

> However, section 90.504(3)(b), Florida Statutes, provides an exception to the husband-wife privilege "[i]n a criminal proceeding in which one spouse is charged with a crime committed at any time against ... the person or property of a child of either [spouse]." Defendant argues that his recorded conversation with his wife did not fall under this exception because there were no criminal charges pending against him during the time that his conversation was recorded. Defendant's claim is meritless. There is no requirement that a defendant must have pending criminal charges section [sic.] 90.504(3)(b) to become applicable. Instead, section 90.504(3)(b), Florida Statutes, plainly provides an exception that allows marital communications to be introduced in criminal proceedings where one spouse is charged with a crime committed at any time against the person or property of the other spouse, or the person or property of a child of either spouse. Here, Defendant was charged with committing three counts of Sexual Activity with a Child and one count of Battery of a Child against his [blank] therefore, the exception under section 90.504(3)(b) applied, and the recorded conversation was admissible. [ECF No. 17-1, p. 234].

Further, the marital privilege is a testimonial privilege and is only violated when a marital communication is introduced in a testimonial proceeding. *State v. Grady*, 811 So. 2d 829, 832 (Fla. Dist. Ct. App. 2002) ("Neither of the privileges [attorney-client or marital], nor the Florida

11

Evidence Code in which they are both codified, addresses whether the voluntary disclosure of otherwise confidential information to law enforcement authorities, outside the context of a testimonial proceeding, somehow taints the investigation or the prosecution of criminal conduct... although the husband-wife privilege may apply to exclude testimony as to confidential marital communications, the privilege does not require the suppression of admissible evidence gathered through law enforcement's investigation").

But again, the thrust of this question relies on the state court's interpretation of state law, which this court will not disrupt. *See Estelle*, 502 U.S. at 67–68. Therefore, because the state court interpreted the state marital privilege law to provide the exception to spousal privilege "that allows marital communications to be introduced in criminal proceedings where one spouse is charged with a crime committed at any time against the person or property of the other spouse, or the person or property of a child of either spouse" [ECF No. 17-1, p. 234], Mr. Brown's counsel again was not ineffective for failing to raise a meritless argument.

Further, Mr. Brown cannot show prejudice for either claim because he has not alleged that had the tape not been played, the outcome of the trial would have been different, especially when the victim testified as to Mr. Brown's culpability. For this independent reason, this claim should be denied.

## VIII. Evidentiary Hearing

Pursuant to 28 U.S.C. § 2254(e)(2), federal courts should not hold evidentiary hearings whenever the applicant "failed to develop the factual basis of a claim in State court proceedings[.]" An exception exists, however. It applies when the claim relates to "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or the claim is otherwise based on "a factual predicate that could not have been previously discovered" with due diligence. 28 U.S.C. § 2254(e)(2)(A). And yet, the facts

12

underlying the claim must also "be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B).

Here, the state record provides all pertinent facts to resolve Petitioner's claims, demonstrating an evidentiary hearing in federal court is not needed. *See Schiro v. Landrigan*, 550 U.S. 465, 474 (2007) ("It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

### IX. Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1). This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

After careful consideration of the record, this Court should not issue a certificate of appealability. If Petitioner disagrees, he may bring his argument to the attention of the District Judge in objections.

### X. Recommendations and Conclusions

Based upon the foregoing it is recommended that:

1. the Petition be DENIED, [ECF No. 9];

2. an evidentiary hearing be DENIED;

3. certificate of appealability NOT ISSUE; and

4. the case CLOSED.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Donald M. Middlebrooks, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

Signed this 10th day of May,

BRUCE REINHART
U.S. MAGISTRATE JUDGE

Cc:

Donald M. Middlebrooks

Irving V. Brown, *pro se*
W53730
Dade Correctional Institution
19000 SW 377th Street
Florida City, Florida 33034

Counsel of record